Slip Op. 17- 109

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| BMW OF NORTH AMERICA LLC,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant,<br><br>and<br><br>THE TIMKEN COMPANY,<br><br>        Defendant-Intervenor. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 15-00052 |

## <u>OPINION</u>

[Sustaining the U.S. Department of Commerce's remand redetermination in the 2010–2011 administrative review of the antidumping duty order on ball bearings and parts thereof from the United Kingdom.]

Dated: August 23, 2017

<u>Max F. Schutzman</u>, <u>Ned H. Marshak</u>, <u>Kavita Mohan</u>, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, NY and Washington, DC, for Plaintiff BMW of North America LLC.

<u>Tara Kathleen Hogan</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the brief was <u>Shelby M. Anderson</u>, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Geert M. De Prest</u>, <u>Terence P. Stewart</u>, <u>Lane S. Hurewitz</u>, Stewart and Stewart, of Washington, DC, for Defendant-Intervenor The Timken Company.

Choe-Groves, Judge: This action was brought by BMW of North America LLC ("BMW" or "Plaintiff") to challenge the final determination in the 2010–2011 administrative review of the antidumping duty order on ball bearings and parts thereof from the United Kingdom.  See Ball Bearings and Parts Thereof From Japan and the United Kingdom, 80 Fed. Reg. 4,248 (Dep't Commerce Jan. 27, 2015) (final results for administrative review 2010–2011), as amended, 80 Fed. Reg. 9,694 (Dep't Commerce Feb. 24, 2015) (amended final results for administrative review 2010–2011) (collectively, "Final Results").  Before the court are the Results of Remand Redetermination, ECF No. 77-1, May 12, 2017 ("Remand Results"), filed by the U.S. Department of Commerce ("Commerce" or "Department") pursuant to the court's remand order in BMW of North America LLC v. United States, 41 CIT __, 208 F. Supp. 3d 1388 (2017) ("BMW").  For the reasons set forth below, the court sustains the Remand Results.

## BACKGROUND

Commerce issued the antidumping duty order on ball bearings from the United Kingdom on May 15, 1989.  See Ball Bearings, and Cylindrical Roller Bearings and Parts Thereof From the United Kingdom, 54 Fed. Reg. 20,910 (Dep't Commerce May 15, 1989) (antidumping duty orders and amendments to the final determinations of sales at less than fair value) ("Order").  Commerce published the notice of initiation of the 2010–2011 administrative review on June 28, 2011.  See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 76 Fed. Reg. 37,781 (Dep't Commerce June 28, 2011).  Challenges to the International Trade Commission's determination in the second sunset review of the Order resulted in Commerce revoking the Order and discontinuing all pending administrative reviews, including the 2010–2011 review.  See NSK Corp. v. United States, 35

C.I.T. __, 774 F. Supp. 2d 1296 (2011); Ball Bearings and Parts Thereof From Japan and the

United Kingdom, 76 Fed. Reg. 41,761 (Dep't Commerce Jul. 15, 2011) (revocation of

antidumping duty orders).  The Order was later reinstated following a decision by the Court of

Appeals for the Federal Circuit in NSK Corp v. U.S. Int'l. Trade Comm'n, 716 F.3d 1352 (Fed.

Cir. 2013).  See NSK Corp. v. U.S. Int'l. Trade Comm'n, 37 CIT __, Slip Op. 13-143 (Nov. 18,

2013); Ball Bearings and Parts Thereof from Japan and the United Kingdom, 78 Fed. Reg.

76,104 (Dep't Commerce Dec. 16, 2013) (notice of reinstatement of antidumping duty order,

resumption of administrative reviews, and advance notification of sunset reviews)

("Reinstatement Notice").  In reinstating the Order, Commerce stated that it was resuming any

previously discontinued administrative reviews, including the 2010–2011 review.  See

Reinstatement Notice at 76,105–06.

    Commerce issued the Final Results on January 27, 2015, with amended results issued on

February 24, 2015.  See Final Results at 4,248 as amended 80 Fed. Reg. at 9,694.  In the Final

Results, Commerce determined that BMW had not cooperated to the best of its ability, applied

an adverse inference in selecting from facts otherwise available ("AFA"), and assigned BMW a

dumping margin of 254.25 percent that was selected from the petition.  See Final Results at

4,248 as amended 80 Fed. Reg. at 9,694; Issues and Decision Memorandum for the Antidumping

Duty Administrative Review of Ball Bearings and Parts Thereof from the United Kingdom;

2010–2011, A-412-801, (Jan. 22, 2015), available at http://enforcement.trade.gov/frn/summary

/multiple/2015-01481-1.pdf (last visited Aug. 15, 2017) ("I&D Memo").

    Plaintiff filed the instant action challenging Commerce's determination and asserting that

Commerce (1) did not have the authority to resume the administrative review, (2) should not

have applied AFA in calculating the dumping margin, and (3) should not have selected the

petition rate of 254.25 percent in applying AFA.  See Compl., Feb. 27, 2016, ECF No. 7; Pl.'s

Rule 56.2 Mot. J. Upon Agency R., Sept. 18, 2015, ECF No. 29.  The court sustained

Commerce's decisions to resume the administrative review[1] and apply AFA in calculating

BMW's dumping margin.[2]  BMW, 41 CIT at __, 208 F. Supp. 3d at 1393–95.  The court

remanded the Department's use of the petition rate in its application of AFA.  See id. at __, 208

F. Supp. 3d at 1395–97.  In remanding the issue, the court explained that Commerce did not meet

its statutory obligation to corroborate the petition rate because:

> First, Commerce failed to explain how the fact that the petition rate was
> numerically between . . . transaction-specific rates calculated for the mandatory
> respondent was sufficient data to adequately corroborate the use of the 254.25
> percent rate against Plaintiff.  Second, the Department did not adequately explain
> why the mere fact that [the mandatory respondent] "had transaction-specific
> dumping margins in excess of 254.25 percent," I&D Memo at 15, was sufficient
> to corroborate the probative value of the petition rate given that [these rates
> represented a small number of transactions during the review].

Id. at __, 208 F. Supp. 3d at 1397.  The court found that Commerce's determination to assign

BMW the rate of 254.25 percent was unsupported by substantial evidence.  See id.  Accordingly,

---

[1] The court found that the Department's resumption of a discontinued administrative review was
consistent with its obligations under the statute and regulations.  See BMW, 41 CIT at __, 208 F.
Supp. 3d at 1393–94.

[2] BMW's first substantive filing with Commerce occurred after Commerce issued the
preliminary results of the administrative review.  See BMW's Direct Admin. Case Brief, PD 71
at bar code 3237085-01 (Oct. 23, 2014).  In the Final Results, Commerce determined that BMW
was uncooperative because BMW missed the deadline to either file a Quantity and Value
questionnaire response or withdraw its request for an administrative review.  See I&D Memo 11-
–13.  The court determined that Commerce's application of AFA against BMW was reasonable
because BMW had not acted to the best of its ability in participating in the administrative review.
See BMW, 41 CIT at __, 208 F. Supp. 3d at 1394–95.

the court instructed Commerce to either provide a new corroboration analysis for the petition rate

or select a new rate with AFA applied.  See id. at __, 208 F. Supp. 3d at 1398.

The Department filed the Remand Results on May 12, 2017, in which it assigned BMW a

rate of 126.44 percent based on a transaction-specific margin calculated for the mandatory

respondent, NSK Europe Ltd. and NSK Bearings Europe Ltd. (collectively, "NSK").  See

Remand Results.  Plaintiff continues to challenge the rate assigned by Commerce, and Defendant

asserts that Commerce's remand results should be sustained.  See BMW's Comments on Results

of Remand Redetermination, June 9, 2017, ECF No. 83 ("BMW Remand Comments"); Def.'s

Resp. BMW of North America LLC's Comments on Remand Redetermination, July 7, 2017,

ECF 87 ("Def. Resp.").

## JURISDICTION

The court has jurisdiction over an action challenging the final determination in an

administrative review of an antidumping duty order.  See 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28

U.S.C. § 1581(c).  The court will uphold Commerce's determinations, findings, or conclusions

unless they are unsupported by substantial evidence on the record or otherwise not in accordance

with the law.  See 19 U.S.C. § 1516a(b)(1)(B)(i).  When reviewing substantial evidence

challenges to Commerce's decisions, the court assesses whether the agency action is

"unreasonable" given the record as a whole.  See Nippon Steel Corp. v. United States, 458 F.3d

1345, 1350–51 (Fed. Cir. 2006).  "The results of a redetermination pursuant to court remand are

also reviewed 'for compliance with the court's remand order.'"  Xinjiamei Furniture

(Zhangzhou) Co. v. United States, 38 CIT __, __, 968 F. Supp. 2d 1255, 1259 (2014) (quoting

Court No. 15-00052                                                                    Page 6

Nakornthai Mill Public Co. v. United States, 32 CIT 1272, 1274, 587 F.Supp.2d 1303, 1306

(2008)).

## DISCUSSION

Plaintiff challenges the Remand Results on the grounds that Commerce's determination

to use the transaction-specific rate of 126.44 percent in applying AFA was unsupported by

substantial evidence.  See BMW Remand Comments 7–24.  Plaintiff claims that the rate is

aberrational, unlawfully punitive, and not related to BMW's commercial reality.  See id. at 7–24.

Defendant rejects Plaintiff's challenges and asserts that Commerce has supported its rate

selection with sufficient evidence.  See Def. Resp. 7–19.  Defendant argues that even though the

transaction-specific rate is high, the assigned rate should not be viewed as aberrational and

punitive because it was selected for the purpose of inducing cooperation.  See id. at 15–19.

Defendant asserts further that Commerce was not required to consider commercial reality in

analyzing the selected rate and, even if it were required to contemplate this factor, the selected

rate relates to BMW's commercial reality.  See id. at 8–17.

If Commerce "finds that an interested party has failed to cooperate by not acting to the

best of its ability to comply with a request for information," Commerce "may use an inference

that is adverse to the interests of that party in selecting from among the facts otherwise

available."  19 U.S.C. § 1677e(b).  When the Department selects a rate in applying AFA, it may

use information from the petition, a final determination in the investigation, any previous review,

or any other information on the record.[3]  See id. at § 1677e(b)(2).

The court affirmed Commerce's determination to apply AFA against BMW in its earlier

opinion, but remanded the issue of Commerce's assignment to BMW of a dumping margin of

254.25 percent.  See BMW, 41 CIT at __, 208 F. Supp. 3d at 1395.  In the Remand Results,

Commerce assigned BMW a new rate of 126.44 percent in applying AFA, which was selected

from a transaction-specific rate calculated for NSK.  See Remand Results 6.  The Department

asserted that it was not required to corroborate this rate because it was based on a transaction-

specific margin for NSK in the instant review.  See id. at 8.  Commerce is not required to

corroborate the use of information on the record that was obtained during the instant segment of

the proceeding (i.e., primary information).  See 19 U.S.C. § 1677e(c). The newly selected

transaction-specific margin of 126.44 percent constitutes primary information that may be

utilized in selecting an AFA rate, see Nan Ya Plastics Corp. v. United States, 810 F.3d 1333,

1348 (Fed. Cir. 2016), and Commerce correctly noted that it was not required to corroborate the

use of primary information.[4]  See Remand Results 8.

---

[3] Commerce's regulations reflect that information from the petition, a final determination in the investigation, or any previous review constitute secondary information.  See 19 C.F.R. 351.308(c)(1)–(2) & (d) (2013).

[4] The court notes that the Trade Preferences Extension Act ("TPEA") recently amended the corroboration requirement in 19 U.S.C. § 1677e.  See Trade Preferences Extension Act of 2015, Pub. L. No. 114-27, 129 Stat. 362 (2015).  Both the pre-TPEA and post-TPEA versions of the statutory scheme only contemplate the corroboration of secondary information.  Prior to the enactment of the TPEA, 19 U.S.C. § 1677e(c) read as follows:

(c) Corroboration of secondary information. When [Commerce] relies on secondary information rather than on information obtained in the course of an

(footnote continued)

Plaintiff contends that the remand results are unsupported by substantial evidence because the assigned rate is aberrational and punitive.  See BMW Remand Comments 7–24. While the Department has discretion to select a rate from information placed on the record of the instant review, a rate assigned pursuant to the Department's application of AFA should not be aberrational or punitive.  See F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).  The Department explained that the 126.44 percent rate was selected "because it is the highest transaction-specific dumping margin that forms part of a closely-connected range of transaction-specific margins."  Remand Results 6.  Commerce noted that the rate was the highest transaction-specific margin that fell outside of the top transaction-specific margins, which the court previously indicated were aberrational.  See id.; BMW, 41 CIT at __, 208 F. Supp. 3d at 1397.  The Department clarified further that: 1) the quantity was not unusual for the model sold in this transaction; 2) the price of this sale was not unusual for the

---

investigation or review, [Commerce] shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal

19 U.S.C. § 1677e(c).  The TPEA amended this section to provide the following:

(c) Corroboration of secondary information

(1) In general. Except as provided in paragraph (2), when [Commerce] relies on secondary information rather than on information obtained in the course of an investigation or review, [Commerce] shall, to the extent practicable, corroborate that information from independent sources that are reasonably at their disposal.

(2) Exception. [Commerce] shall not be required to corroborate any dumping margin or countervailing duty applied in a separate segment of the same proceeding.

19 U.S.C. § 1677e(c).  The court need not reach the issue of whether the TPEA applies to Commerce's Remand Results because under either version of the statute, it is evident that Commerce is not required to corroborate the use of primary information when applying AFA.

model sold in this transaction; 3) although a rebate was involved in this transaction, the

respondent provided rebates in several other transactions of this model for a similar amount; and

4) although there was air freight involved, the respondent had utilized air freight in several other

transactions of this model for a similar cost.  <u>See</u> Remand Results 6–7.  The Department's

analysis indicates that the 126.44 percent rate, while high, was neither aberrational nor punitive.

Commerce exercised its statutory discretion in applying AFA and selected a rate from the

highest, non-aberrational, transaction-specific margin.  The selected rate strikes a reasonable

balance, as it serves the goal of inducing cooperation with Commerce's administrative review

procedures and is not based on an aberrational rate.  <u>See</u> <u>De Cecco</u>, 216 F.3d at 1032–33.  The

court finds that Commerce complied with its statutory obligations and supported its

determination to assign a 126.44 percent margin with substantial evidence.

  The court instructed Commerce in its remand order to either corroborate the use of the

254.25 percent petition rate or determine a new AFA rate consistent with the agency's

obligations.  <u>See</u> <u>BMW</u>, 41 CIT at __, 208 F. Supp. 3d at 1398.  The Department chose to

determine a new rate of 126.44 percent in applying AFA, which is reasonable and consistent

with the Department's obligations.  <u>See</u> Remand Results 1–6.

## **CONCLUSION**

For the reasons set forth above, the court finds that Commerce has complied with the court's previous opinion and remand order in selecting a new AFA rate that was supported by substantial evidence.  The court sustains Commerce's remand redetermination.

Judgment will be issued accordingly.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:  August 23, 2017
        New York, New York